**Sam P. Israel, P.C.**
Sam P. Israel (SPI0270)
Timothy Savitsky (TS6683)
180 Maiden Lane, 6th Floor
New York, New York 10038
T: (646) 787-9880 | F: (646) 787-9886
samisrael@spi-pc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| B.B. STAR INDUSTRIES LTD.,<br><br>       Plaintiff,<br><br>  -against-<br><br>JATINDER DHALL, A/K/A RICKY SINGH DHALL.; PINDER INTERNATIONAL, INC.; C'KEL GENERATION CORP. f/k/a 30 BELOW CORPORATION, INC.; BEDFORD CLOTHIERS, INC; and SEENA INTERNATIONAL, INC.;<br><br>       Defendants. | Index No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff B.B. Star Industries, Ltd. ("**BB Star**" or "**Plaintiff**"), by and through its counsel, Sam P. Israel, P.C. of 180 Maiden Lane, Sixth Floor, New York, NY 10038, as and for its complaint against Jatinder Dhall, *a/k/a* Ricky Singh Dhall ("**Dhall**"), Bedford Clothiers, Inc. ("**Bedford**"), Pinder International, Inc. ("**Pinder**"), Seena International, Inc. ("**Seena**"), C'Kel Generation Corp., *f/k/a* 30 Below Corp., Inc. ("**30 Below,**" together with Bedford, Pinder, and Seena the "**Corporate Defendants**") (collectively with Dhall, the "**Defendants**"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by a Hong-Kong-based sourcing and exporting company which seeks to recover payment for branded apparel it designed, arranged for the manufacture of, and shipped in fulfillment of orders by defendants Pinder and 30 Below (interchangeable companies sharing the same address and conducting the same business). B.B. Star oversaw the production and shipment of tens of thousands of individual pieces of "Brooklyn Xpress" branded apparel (the "**Goods**") ordered by the Defendants in late 2016. The Defendants have accepted the shipments without any reservation or qualification but are yet to pay B.B. Star the $144,663.20 presently due and owing.

2. Pinder and 30 Below's principal, Dhall, has acknowledged in text messages, emails, and phone conversations: the legitimacy of the debt owed to the Plaintiff, that they are responsible for paying the entire invoiced amount, and that his companies are without any defense to efforts to secure its recovery, yet, despite due demand therefor, they have withheld payment.

3. The Defendants' contractual breaches are not a mere matter of hard times but are instead part of Dhall's fraudulent business model. 30 Below, like other dummy entities minted by Dhall, is not part of a bona fide, ongoing business concern but serves as a disposable vehicle to collect revenues achieved on sales of finished apparel made for Dhall under his brands (including, "Brooklyn Xpress" and "Ditch Plains") by global sourcing companies (such as Plaintiff B.B Star). After the buyer corporation receives the manufactured goods, Dhall immediately transfers the purchased items to one of his other corporations (such as Defendants Pinder and Seena) at non-arms-length prices, allowing Dhall to operate his entities with limited cash reserves in order to fold them once their debt exceeds their ongoing utility. The Corporate Defendants are not operated as independent enterprises or part of a genuine conglomerate, but rather shields to creditor collection. And they have made him a rich man at the expense of serial suppliers left with worthless claims against asset-denuded entities.

Case 1:18-cv-03669-ATD Document 3 Filed 04/25/18 Page 2 of 14

4.	Notwithstanding their different names, Dhall's corporations (including Defendants Pinder, Seena, Bedford, and 30 Below) all:

> (a) share identical office space, officers, shareholders, and employees;
>
> (b) perform the same function of buying and selling "Brooklyn Xpress" and "Ditch Plains" apparel from global sourcing companies in China in order to resell the apparel in the United States for Dhall's benefit;
>
> (c) do not operate at arm's length with one another;
>
> (d) do not function as independent profit centers; and
>
> (e) are under the complete domination of Dhall.

Dhall's manipulation and exploitation of the corporate form to dodge foreign creditors while reaping millions of dollars in profits subject him and his network of faux corporations to alter ego liability for Pinder and 30 Below's breaches of contract.

5.	Because of the foregoing—and as more fully detailed in the allegations set forth below—the Plaintiff seeks declaratory relief, compensatory damages assessed jointly and severally against Defendants for unjust enrichment, fraudulent conveyances, and breach of contract in an amount exceeding $144,663.00, together with punitive damages in an amount to be determined at trial.

## PARTIES

6.	Plaintiff B.B. Star, is a business entity incorporated under the laws of, and with its principal place of business and headquarters located in, Hong Kong. B.B. Star's main office is located at Units 508-509, 5th Floor, China Aerospace Tower, Concordia Plaza, No.1 Science Museum Road, Kowloon Hong Kong.

7.	Upon information and belief, Defendant Jatinder Dhall *a/k/a* Ricky Singh Dhall is an individual and a domiciliary of the State of New York who resides at 810 Old Post Rd. Bedford, NY 10506-1214. Dhall is a citizen of New York State for the purposes of federal diversity jurisdiction.

8.	Upon information and belief, Defendant Pinder International, Inc. is a company incorporated under the laws of New York with its principal place of business located at

3

260 West 39th Street, Suite 1702, New York, NY 10018. Pinder's registered business address with the Department of State is 1140 Motor Parkway #A, Hauppauge, NY 11788. Pinder is a citizen of New York State for the purposes of federal diversity jurisdiction.

9. Upon information and belief, Defendant Seena International, Inc. is a company incorporated under the laws of New York with its principal place of business located at 260 West 39th Street, Suite 1702, New York, NY 10018. Seena's registered business address with the Department of State is 1140 Motor Parkway #A, Hauppauge, NY 11788. Seena is a citizen of New York State for the purposes of federal diversity jurisdiction.

10. Upon information and belief, Defendant C'Kel Generation Corp. *f/k/a* 30 Below Corp., Inc. is a company incorporated under the laws of New York with its principal place of business located at 260 West 39th Street, Suite 1702, New York, NY 10018. 30 Below Corp., Inc.'s registered business address with the Department of State is 1140 Motor Parkway #A, Hauppauge, NY 11788. 30 Below Corp., Inc. is a citizen of New York State for the purposes of federal diversity jurisdiction.

11. Upon information and belief, Defendant Bedford Clothiers, Inc. is a company incorporated under the laws of New York with its principal place of business located at 260 West 39th Street, Suite 1702, New York, NY 10018. Bedford's registered business address with the Department of State is 1140 Motor Parkway #A, Hauppauge, NY 11788. Bedford is a citizen of New York State for the purposes of federal diversity jurisdiction.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

13. The Court has *in personam* jurisdiction over the Defendants by reason of: their presence in this State and District; and/or due to their purposeful activities within the State which have given rise to the Plaintiff's injuries; and/or by reason of the Defendants' continuous and systematic conduct of business within this State, District, and County.

14. Venue is proper in this judicial district pursuant to 28 U.S.C.A. § 1391(b) (1) and (2) because defendant Dhall resides in this district and all the Defendants reside in the State in which this district is located; and/or because a substantial part of the property that is the subject of the action is situated in this district; and/or because events or omissions giving rise to the underlying claims occurred in this district.

## FACTS

*Background and the Parties' Course of Dealings*

15. B.B. Star is a reputable, multinational global sourcing company for apparel such as jeans, shorts, t-shirts and polo shirts. It transacts business from its office in Hong Kong as well as at various locations on the mainland of the People's Republic of China. Since 1996, B.B. Star has established considerable goodwill among its clientele and trading partners by reliably arranging for the production of apparel with factories located in China based upon the orders of its clients. It then ships those goods to its clients around the globe who, in turn, sell their apparel in retail stores.

16. The Corporate Defendants collectively operate two clothing lines based in the United States under the trademarks "Brooklyn Xpress" and "Ditch Plains." Dhall uses the Corporate Defendants to (a) design apparel, (b) order the manufacture and delivery of its apparel from global sourcing companies such as B.B. Star, and then (c) sell the final products in bulk to U.S. retail stores (such as Walmart and V.I.M.) throughout the United States for profit.

17. Dhall maintains a wholesale distribution facility at 1140 Motor Parkway Suite A, Hauppauge, NY 11788 (the "**Long Island Office**") to store certain records and merchandise for each of the Corporate Defendants.

18. Dhall primarily operates each of the Corporate Defendants from his Manhattan office located at 260 West 39th Street, Suite 1702, New York, NY 10018 (the "**Manhattan Office**").

5

19. The Corporate Defendants all share common office space and employees. Moreover, these companies are reliant upon Defendant Seena to pay employee salaries and liabilities.

20. B.B. Star first did business with the Corporate Defendants in 2008 by having direct business dealings with Pinder and Bedford to manufacture and ship Dhall's "Brooklyn Xpress" brand apparel.

### *Invoices Due and Payable to B.B. Star Total $144,663*

21. At issue are two commercial invoices totaling $144,663 for clothing apparel that was manufactured in accordance with the specifications of Pinder's purchase orders, then timely delivered to Dhall/Pinder. For each of the purchase orders, B.B. Star devoted its workers, employees, quality control personnel, and vendors to execute Pinder's labor-intensive requests and manufacture tens of thousands of pieces of custom designed apparel for Dhall's "Brooklyn Xpress" clothing line.

22. Now, approximately one year after accepting the Goods without reservation and selling them for profit, the Defendants have yet to pay B.B. Star.

23. The details of each of the trade are as follows:

*Invoice HK/11826*

24. On or about December 14, 2016, B.B. Star sent Defendant Pinder invoice number HK/11826 ("Invoice 11826") for $129,326.40 based upon its production and shipment of "Brooklyn Xpress" brand clothing.

25. Invoice 11826 became due and payable on February 16, 2017.

26. Dhall has acknowledged Pinder's liability for Invoice 11826 as well as their receipt of goods thereunder.

27. Dhall has acknowledged neither he nor the Corporate Defendants have any defenses to payment of Invoice 11826.

6

28. The Defendants have already paid a portion of Invoice 11826, but a substantial amount remains unpaid notwithstanding Dhall's promises that the remainder is forthcoming.

*Invoice HK/11827*

29. On or about December 14, 2016, B.B. Star sent Defendant Pinder an invoice number HK/11827 ("Invoice 11827") for $126,988.56 based upon its production and shipment of Brooklyn Xpress brand clothing.

30. Invoice 11827 became due and payable on February 10, 2017.

31. Dhall has acknowledged his and the Corporate Defendants' liability for Invoice 11827 as well as their receipt of goods thereunder.

32. The Defendants have already paid a portion of Invoice 11827, but a substantial amount remains unpaid notwithstanding Dhall's promises that the remainder is forthcoming.

*Dhall's Partial Payment of Invoices 11826 and 11827 Through 30 Below*

33. B.B. Star received purchase orders in 2016 from, and issued its corresponding invoices to, Defendant Pinder. However, once Pinder's invoices became overdue, Dhall used Defendant 30 Below to issue partial payments on those invoices through a series of post-dated checks. In so doing, he set B.B. Star up to try and squeeze payment from an insolvent shell.

34. Meeting at the Corporate Defendant's headquarters in Manhattan, Dhall handed one of B.B. Star's officers twelve post-dated checks (each for roughly $20,000.00) that were issued by Defendant 30 Below Corp. (as opposed to Defendant Pinder who had been issued B.B. Star's invoices). Dhall convinced B.B. Star to release the goods shipped pursuant to Invoice Nos. 11826 and 11827 from storage in New York so that he could take them and sell them for profit. In return, Dhall instructed B.B. Star to deposit the twelve post-dated checks in satisfaction of Invoice Nos. 11826 and 11827 in staggered intervals between July and December 2017 at the approximate rate of two checks per month.

35. Most of the checks bounced over the course of the next six months. And when B.B. Star attempted to re-deposit them on Dhall's instruction, most of them bounced again.

36. Over one year after the invoices were due to be paid in full by Pinder and four months after the final post-dated check was due to be cashed, $144,663.20 remains due and owing to B.B. Star.

*Piercing the Corporate Veil*

37. Dhall's corporations are shells designed to form an illicit barrier between creditors and Dhall's corporate profits and assets. To this end, Dhall operates the Corporate Defendants as a single business entity and without separate existences of their own. Once the debt of one of his corporations reaches unmanageable levels, Dhall then denudes it of assets and leaves creditors to sue a hollow shell.

38. The Corporate Defendants all jointly share two offices, the Manhattan Office and the Long Island Office, out of which Dhall's clothing business is run.

39. Upon information and belief, purchase orders and financial transactions between the Defendant Corporations, global sourcing companies, and retail stores are conducted at the Manhattan Office, which serves as the nerve center for the Defendants' operations.

40. Upon information and belief, wholesale distribution of "Brooklyn Xpress" and "Ditch Plains" clothing for each of the Corporate Defendants occurs at Dhall's Long Island office.

41. Upon information and belief, though the Long Island Office is registered as 30 Below's primary office with the Department of State, 30 Below's operations are truly conducted out of the Manhattan Office.

42. Dhall visits the distribution center in the Long Island Office only once each fiscal quarter.

43. The Corporate Defendants share common management and employees. Srinivas Kothapally (*a/k/a* Vasu Kothapally, "**Kothapally**") is the sole employee in charge of

8

making purchases from global sourcing companies such as the Plaintiff and arranging for shipping.

44. Like the rest of Dhall's employees, Kothapally performs the exact same tasks for 30 Below, Bedford, Pinder, and Seena. Yet Kothapally only receives a salary from a single company: Defendant Seena.

45. Evidencing the indistinguishable relationship and functions of the Corporate Defendants is the fact that "seenaprod@brooklynxpress.com"—believed to be operated by Dhall himself—was included by the Seena staff on many of their emails with B.B. Star to order goods on Pinder/30 Below's purported behalf.

46. In truth, 30 Below has no true employees or business existence of its own outside of that which it shares with the remaining Corporate Defendants and Dhall. 30 Below is merely used as a shell entity by Dhall's employees to enter into multi-million-dollar contracts and absorb debt which the Defendants have no intent to repay.

47. The Corporate Defendants share assets as well as employees. Upon information and belief, nearly one hundred percent of goods purchased from global sourcing companies by Bedford, 30 Below, and Pinder are then transferred at below market prices to Seena before being sold to U.S. retailers.

48. Such *transfers*, however, are only made on paper since, upon information and belief, all of the Defendants use identical storing and shipping facilities to store and ship Brooklyn Xpress and Ditch Plains apparel.

49. Dhall is in total control of which of his companies receive profits and which receive losses.

50. Dhall considers each of his companies interrelated as part of a single corporate entity. In fact, his delivery of checks issued by 30 Below at Seena's Manhattan Office in fulfillment of invoices issued to Pinder demonstrates the lack of real distinction between the Corporate Defendants. Through his control over the remaining Corporate Defendants, Dhall was able to decide whether he would allow 30 Below's checks would

9

clear. Most of them ultimately bounced because Dhall consciously chose to leave 30 Below's coffers empty.

51. Moreover, on June 27, 2014, Dhall participated in a telephone conversation with a global sourcing company which—like B.B. Star here—had recently sold a large quantity of goods to Defendant Pinder but had not received payment. The conversation was recorded by the unpaid global sourcing company.

52. During the call with Defendant Pinder's client, Dhall expressed his view that there was no true difference between the Corporate Defendants (such as Pinder and 30 Below).

53. Dhall does not view, and accordingly does not *operate*, the Corporate Defendants as independent businesses.

54. Upon information and belief, Dhall, as the owner of the Corporate Defendants:

   a. fails to hold regularly scheduled meetings;

   b. fails to adequately maintain the books and records;

   c. fails to properly capitalize the Corporate Defendants;

   d. commingles corporate and personal assets;

   e. commingles each Corporate Defendant's assets with those of those of the remaining Corporate Defendants;

   f. shuffles assets in and out of the Corporate Defendants without fair consideration;

   g. fails to operate the Corporate Defendants as independent corporate entities; and

   h. denuded Pinder and 30 Below of assets to avoid the claims of creditors.

55. Dhall and the Corporate Defendants are nothing more than alter egos. Accordingly, the corporate veil of 30 Below and Pinder should be pierced so that Dhall, the Corporate Defendants, and any other persons or corporate entities Dhall uses to

10

wrongfully shield corporate assets, are found individually liable for all the alleged causes of action specified in this Complaint.

# COUNT I
### *Breach of Contract Under N.Y. U.C.C.*
*(Against All Defendants)*

56. The Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

57. Between September 2016 and December 2016, the Plaintiff and Pinder entered into two agreements for the production and shipment of the Brooklyn Xpress Goods pursuant to Invoices HK/11826 and HK/11827.

58. The Goods had an aggregate price of $256,314.96.

59. Between December 2017 and July 2018, the Defendants accepted the Goods and did not seasonably reject them.

60. Upon information and belief, the Defendants proceeded to sell and distribute the Goods to third parties without incident.

61. Dhall hand-delivered twelve post-dated checks to B.B. Star in June 2017 in purported satisfaction of Pinder's debt.

62. Each of the twelve checks were issued by Defendant 30 Below.

63. Because the checks repeatedly bounced when B.B. Star attempted to cash them, B.B. Star continues to be owed $144,663.20 from the Defendants.

64. Defendant Pinder breached its agreements with the Plaintiff and is liable under the New York Uniform Commercial Code (N.Y.U.C.C.) for compensatory damages and statutory interest from the date of the breaches.

65. Alter ego liability exists, and the corporate form will be ignored by courts applying New York law when a person dominates a corporation so as to abuse the privilege of incorporation and cause wrongful harm to another. Thus, corporate veil piercing is a doctrine designed to achieve equity in the face of corporate abuse.

66. Upon information and belief, Dhall has abused the privilege of doing business in the corporate form by failing to treat Pinder and 30 Below as independent corporations.

11

Instead, Dhall denuded Pinder and 30 Below and treated them as sham companies to siphon their assets to the remaining corporate defendants and himself as part of an effort to dodge creditors. By treating each of his corporations interchangeably Dhall has exposed himself and the Corporate Defendants to alter ego liability.

67. Accordingly, each of the named Defendants share in Pinder's contractual liabilities, jointly and severally, pursuant to the New York common law of alter ego liability.

## COUNT II
*Unjust Enrichment*
*(Against All Defendants)*

68. The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

69. This claim is stated in the alternative to Count I (Breach of Contract).

70. Whereas the Defendants ordered and received goods for which they have not paid, but which, upon information and belief, they have resold for profit, they have realized and continue to realize substantial financial gains from their unlawful activities.

71. As a result of the foregoing, the Defendants have been and continue to be unjustly enriched at the Plaintiff's expense. The Plaintiff is therefore entitled to recover those sums by which the Defendants have been and will hereafter be unjustly enriched.

## COUNT III
*Fraudulent Conveyance*
*(Against Seena)*

72. The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

73. The Plaintiff delivered the Goods, valued at $256,314.96, to defendant Pinder between December 2016 and July 2017.

74. Upon information and belief, Defendant Pinder received some or all of the Goods and transferred them to Defendant Seena without receiving fair consideration and at a time when Defendant Pinder was insolvent or would be rendered insolvent thereby.

12

75. Upon information and belief, at no time has Seena reimbursed Pinder for the over $256,314.96 worth of Goods it received from Pinder and which were produced by the Plaintiff.

76. Pinder's transfer of assets derived from its agreements with the Plaintiff constitutes a constructive, or in the alternative, actual fraudulent conveyance under Article 10 of the New York Debtor and Creditor Law.

77. As a direct and proximate result of the foregoing acts, the Plaintiff sustained damages and Seena is liable to the Plaintiff in an amount to be determined at trial, but reasonably believed to exceed the sum of $144,663.20 including attorney's fees.

## COUNT IV
### *Declaration of Shared Liabilities*
### *Under The Declaratory Judgment Act 28 U.S.C. §2201*
*(Against All Defendants)*

78. The Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

79. The Declaratory Judgment Act, 28 U.S.C. §2201, empowers this district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" in the pleading so long as the request derives from a "case of actual controversy."

80. Each of the corporate defendants herein are alter egos of one another as set for in ¶¶38-56, *supra*.

81. The Court should declare Dhall and the entities to be jointly and severally liable for any liability found to arise under Counts I, II, and III since the alter ego nature of the Defendants is an underlying cause of the present controversy.

WHEREFORE, the Plaintiff demands the following relief:
  A. On Count I: actual damages in an amount to be determined at trial and a finding of personal liability on Dhall, alter ego liability on the Corporate Defendants, together with New

York's statutory prejudgment interest at a rate of 9% per annum;

B. On Count II: actual damages in an amount to be determined at trial;

C. On Count III: recession of the fraudulent conveyances and damages in an amount to be determined at trial but reasonably believed to exceed $144,663.20, plus costs, interest, and attorneys' fees under New York's Debtor and Creditor Law;

D. On Count IV: A declaration that the Defendants are alter-egos of one another and joint-and severally liable for one another's debts; and

E. Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, NY
April 25, 2018

**SAM P. ISRAEL, P.C.**

By: _____

Sam P. Israel, Esq. (SPI 0270)
Timothy Savitsky, Esq. (TS6683)
*Attorneys for B.B. Star Industries, Ltd.*
180 Maiden Lane, 6th Floor,
New York, N.Y. 10038;
T:(646)787-9880;F: 646-878-9886;
samisrael@spi-pc.com